of America or arguments not to exceed 15 minutes per side. Mr. Kelvin Alexander Schenck for the court. Alex Schenck on behalf of Richard Woolsey. Criminal defendants are entitled to know of any plea offers that their counsel has offered and they're prejudiced when counsel fails to communicate those offers and the defendant receives more jail time. That is exactly what happened here. The government presented Mr. Woolsey's attorney Edward Wishnow with multiple plea offers, plural, including for 27 to 33 months imprisonment. The government's view on appeal. Multiple times below, Mr. Woolsey argued that Mr. Wishnow, his attorney, failed to communicate multiple offers and the government never denied him. I know you explained this in your brief, but back up a second and just explain it to me again because I think it's in your reply where you say, look, we don't really mean multiple offers. We mean one offer with X because I get lost in the multiple offers, to be honest. I know you're living with language that's kind of being cooked up, but I thought you did a nice job explaining it. I think in your reply brief that it's really one offer. Can you talk to me about that just for a minute? Sure. If I could step back one second. I think there could have been multiple offers and to explain what happened there. I think that there could have been the 33 to 41 month offer and also the 27 to 33 month offer. I think what could have been consistent with the 27 to 33 month offer existing at the same time as the 33 to 41 are things that are apparent on the only record materials we have from that October 26th meeting. For example, it could have been that the government offered the 27 to 33 month offer with acceptance. That Mr. Woolsey could have agreed to assist in the prosecution of his co-conspirator, Ryan Vinco. That's not actually in the record before you here, but I think it could in part explain why there would have been these two separate offers. That's not traditionally how it's done, right? Traditionally what happens is the AUSA says, I'm offering you a plea and this is the relevant conduct I can prove from the indictment, which we know from the transcript. That's the language. From the indictment. We can figure out that number. We can sit down and figure out that number. Then acceptance you can figure out. The only thing you can't figure out is a five K, but five Ks are completely within the discretion of the government and promised by them and you can never communicate that to your client. It can never be deficient not to communicate that because it's a hope and a dream. So explain to me how you're getting to what you're getting to. So you mean to the, now do you mean to the one offer with the multiple pleas scenarios? Yeah. How do you get to 27 to 33? I'm just not clear how you get there. I get that the defense attorney might have hoped that they might have agreed to fight it out at sentencing. There might be all kinds of things, but I'm not sure what your theory is of how you get to the 27 to 33 other than him saying, look, this was on a piece of paper, so it must have been so. And you mean by how we get to the 27 to 33 is a freestanding offer? Yes. Yeah. Well, I don't even understand how, yeah, how as a freestanding offer, how it can be part of an offer. Just explain that to me. Yeah. So as a freestanding offer, I think our best support here would just be that it is Mr. Woolsey argued multiple times below that there were multiple offers that Mr. Wishno failed to convey, and the government has never disputed that multiple offers were made. It's not clear from the record why the government would have structured it the way that it did. And I think that at least calls for an evidentiary hearing to understand why that may have been the case. It could be because of things that aren't on the single notes that we have from the meeting and from Mr. Wishno's letter describing that meeting. But turning to the one offer with multiple plea scenarios, how the 27 to 33 month came about there seems to be tethered to just the loss amount that may have been proven at a later kind of sentencing hearing. It was indeed the only offer ever discussed before the court. The 33 to 41? Yes, you know that. So I don't think that, I think I would object to that. At the October 30th status conference, the district court was clear that he did not want AOSA Reynolds to say what the range was in the offer. And she agreed, I will not say what the range is. Instead she just represented what the sentencing range maybe could have been based on the four corners of the indictment. She did say 33 to 41. She did, but then she got cut off actually mid-sentence. And so the judge there just asked, and all she was explaining there was what sentencing ranges could have been available based on the four corners of the indictment. She began an answer and then stopped. She said, so Mr. Wishno and I talked about that last week. I thought it was 33 to 41 months. He thinks it. So she's, so what they're saying, because if you look at what's before that, she's saying, look, we're going to limit, if he pleas, we're going to limit it to the four corners of the indictment. Happens all the time in America. And I think that sentencing range, which indicates to me the plea agreement didn't include a sentencing range. That was going to be left to sentencing for the government to prove their conduct, but they agreed to limit it to the indictment. She calculated it, came to 33 to 41 months. He calculated it independently, came to 27 to 33 months. Everyone agrees that plea offer the defendant knew about. Why isn't that the most rational reading of that transcript? So I don't think that Mr. Woolsey knew about the plea offer, that a particular plea offer had two prongs, a 33 to 41 and a 27 to 30. But it doesn't have two prongs. In other words, this happens every day in America. The government says, I'm going to let you plea, you're going to plea, and we will not prove anything beyond the indictment to prove the relevant conduct. And I think that's 33 to 41. If you want to tell your clients, that's what I'm going to be asking for. And we win 90% of the time. You think it's 27 to 33. Fine. Game on. I'll see you at sentencing. That's where our fight will be. I don't think there's record evidence that Mr. Wischner communicated that that was the terms of the offer. I think there's only evidence that Mr. Wischner communicated to Mr. Woolsey that the government had offered a 33 to 41 month offer, full stop. Okay. So now that brings me to my next question, which is, again, this happens all the time. And are defense attorneys always supposed to communicate, is it deficient for them not to communicate their hopes and dreams of what they hope to achieve for their client? Or do they have to communicate, because as I read the law, all they have to communicate is the offer made by the United States. And if that were true, that was not what happened here. The offer made by the United States would have been to go, for him to admit guilt, and then to go to a sentencing hearing. And here are the two possibilities. 27 to 33 months, if the loss is within a certain range, or 33 to 41. And I think Mr. Wischner had an obligation not just to say, hey, if you admit guilt, there will be a sentencing hearing, and we can figure out what the loss will be there, but to actually explain, here are the two scenarios, and they're tethered to the amount of loss. And that way, Mr. Woolsey could make a more informed decision on whether to plead or not. He didn't realize that it was tethered to the amount of loss or not. There's no record evidence to support that that actually happened. That could have made a real difference here. He could have decided to allocate his resources differently. He may have decided to plead even to the 33 to 41. I know that he turned that down on the kind of lack of information that he had, but he would have done something otherwise, had he known more. And that few months made all the difference in the world? It did, Your Honor. I understand where you're coming from there. I guess what I would say is this. I haven't seen any decisions from the Supreme Court, this court, another court, that kind of nitpicks the gap between an offer that was turned down and an offer that was never disclosed. And there's lots of... Did Judge Cohen preside over the original plea sentencing and over the 2255? He did, Your Honor. What should we make of that? I mean, he seems like a better positioned judge than we are to figure out what happened. I don't disagree with that, and I think that's an even stronger reason to have an evidentiary hearing here. All of the conduct I'm talking about... Well, I think he'd be the best person to know whether there should be an evidentiary hearing. You think he'd be the best person to know whether there should be? Yeah, he decided not to. So I think that that was still legal error, and there's a couple reasons for that. First, he didn't say anything about the 27 to 33-month offer. You can either call it a separate offer or at least a scenario within one offer. So he just plainly didn't address a central argument that Mr. Woolsey made in his habeas petition below. And I think that is itself legal error in this case, particularly because the standard to get an evidentiary hearing is light, as this Court has said multiple times. And in fact, it's mandatory unless the evidence so conclusively goes against the defendant that none is necessary. And that's just not true here. Mr. Woolsey's narrative below isn't inherently incredible or conclusory. It's supported by lots of facts. It's all the elements. So unless the Court has any other... You said what you wanted to say? Yeah. All right. There's nothing wrong with stopping at that point. All right. You'll get full rebuttal and more if you need it from the government. Good morning, Your Honors. Amanda Jawad on behalf of the United States. May it please the Court. There was only one offer extended in this case, and Mr. Woolsey was aware of that offer because it was discussed on the record at the October 30th status conference. Your friend on the other side says, look, he was aware of part of the offer but not the full offer, and that full could have been determinative. And there's a factual dispute and it wasn't on the record what his counsel thought. And his counsel, he obviously got rid of his counsel. Why not have an evidentiary hearing? I mean, you agree the standard's very low, right? When the defendant presents an affidavit and it's neither contradicted nor inherently incredible, it seems to me it isn't, and you haven't offered anything more than a contrary representation. We've said repeatedly he's entitled to an evidentiary hearing. Because an evidentiary hearing is not necessary. We're here. The record does contradict the defendant's statement. Why? Explain that to me. I'm not sure I follow. Because the only thing the defendant has ever come forward with to show that there was any offer that included a 23 to 33-month scenario is one piece of paper from his attorney. Well, plus this sentence. I mean, doesn't, isn't what he was going to, I mean, Mr. Wishnow and I talked about that last week. I thought it was 33 to 41 months. He thinks it's, and we know that's going to be lower before he gets cut off. And what he's saying is, my counsel never communicated that to me, so I couldn't make an informed judgment as to whether to accept the plea. And I think all that matters, as you know, being in AUSA, in 99% of criminal cases, is the sentence. Right? When the U.S. is prosecuting, it's the sentence that matters. Right. But there was an indication on the record, and Ms. Reynolds did get cut off, but there was an indication that counsel does think it's something lower. And Mr. Wishnow said that he had a discussion with Mr. Woolsey a day before the status conference where he went over all of this. That's in his letter, which is in the record. And also, Judge Cohn asked Mr. Woolsey, do you understand what we're talking about here? And Mr. Woolsey said yes. Tell me if I'm wrong. This is a vague recollection, so you should correct me. I thought if the defendant and his former counsel had different memories, the usual standard is to have a hearing and make a credibility determination. Maybe you're right. Maybe he's going to decide in front of the attorney. But I thought the threshold was pretty low on this. You should tell me if I'm wrong. It is a low threshold. And if we're talking about simply a battle of affidavits, this court has remanded in that scenario. But I think what we have here is a memorialization on the record at that status conference, and that's what sets it apart from cases like the Valentine case or the POLA case that relied on either affidavits or vague statements on the record like in the Valentine case. So here we have this on-the-record discussion, and Mr. Woolsey says right after this discussion of what the guideline range is and what the offer is, yes, I understand. And that's because he had a conversation with his attorney the day before where they went over all of what was discussed three days prior to that with the AUSA. And if you look at the transcript, it never says offers. Everyone refers to it as one offer. And so what's clear from the record is that there were multiple different guidelines scenarios discussed at that October 26 meeting, but then that conversation was cemented at the October 30th status conference where Mr. Woolsey was present. I have a silly question. A written plea agreement was never prepared and turned over, right? That's correct. There's nowhere in the record that would indicate that there was a written plea offer. And my reading of the transcript is that this was all a bit informal, and one of the reasons perhaps that it didn't become a written offer is because the defendant didn't show any interest in taking the offer. His next attorney that later in 2013 said, and we have an affidavit from him saying this, he never showed any interest in pleading guilty. And Mr. Woolsey, there was a big gap between this status conference and October 30th and when the case actually went to trial. And during all that time, Mr. Woolsey- Does that, does it matter? I think your friend is right, but I'm just curious because it seems like, is his, does all of this corroborate that he probably knew? Is that what your argument is? Because the difference between 27 to 33 and 33 to 41, it seems like, oh my gosh, I just got six months, which is even arguable because you could have gotten the same sentence, 33 months, that that would have made all the difference if he was never interested. And does that make sense? Does my question make sense? In other words, does Burgess support that he probably knew, which is your theory, because the gap was so different? If he was never interested, then it doesn't matter. Well, I think Burgess's affidavit does support our theory that he was aware of these different guideline ranges and where, where the government was in terms of what we were willing to offer and was not interested in pleading guilty at the time. And it was never, there's no indication at the record that the topic of plea discussions was ever broached again in that entire year long delay between this status conference and when the case actually went to trial. How often are there multiple offers? There, I've never encountered a situation where there are multiple simultaneous offers at the same time. And that really doesn't make sense. That's such a strange way to bargain. I mean, make two offers. The high one or the low one? And it's like, why don't we start with the low one and then we'll go from there. But, but maybe, but I, but I could, what I was thinking would happen is you offer one, the higher one, and he says, now I'm going to trial, and then you come back with the lower one. So that's what typically happens. That could have happened here. Yes. But they're not, but you wouldn't call them multiple offers. You would say sequentially. Yes, but there, it seems like Mr. Woolsey's claiming on appeal that there were multiple offers given simultaneously. That doesn't make any sense. And that's what we pointed out in our brief. My colleague who wrote the brief made a very good point of, you wouldn't offer someone a car and say, do you want to pay $12,000 or $15,000, you know, the same way that a prosecutor wouldn't offer a defendant an offer to a lower scenario or a higher scenario. No, but his, his, his response is, it makes perfect sense, which is, you didn't offer me a car with two prices. You offered me a car and we said, we'll get an appraisal. I thought the appraisal would come back at $8,000. You thought $10,000. That happens all the time, right? You plea and we fight the guidelines out at sentencing. That's all he's saying. And you're, the government thought it'd be $33,000 to $41,000 when limited to the indictment. He thought it'd be $27,000 to $33,000 and he didn't communicate this ladder. And had he communicated this ladder, my guy would have pled. I think that is a valid reading of what happened on the 30th is maybe they were going to agree to disagree as to the guideline range and that would be He heard the prosecutor say what she believed the range is and that her attorney had a different idea, which as you pointed out, Judge Thapar would have been lower. And Mr. Woolsey heard that and was present at the time. So, and then we have this extra letter from Mr. Wishnow that kind of corroborates that he knew what was going on because Mr. Wishnow says we met on the 29th, which is a day before the status conference. And Judge Cullen relied very heavily on this transcript of the status conference when he made the determination that an evidentiary hearing was not necessary. And I think what's helpful about the transcript is that it happened contemporaneously when all of these discussions were happening. So any affidavit that could have been written four years later when the 2255 was litigated or an evidentiary hearing that may happen seven years later is not going to be as accurate as the parties putting their during when plea negotiations were happening. And that's what Judge Cullen relied on in making his decision. And that was not an abuse of discretion. Any of the Supreme Court cases on this offer and duty to communicate deal with the way Judge Thapar was just putting it that, you know, what's on the table is this. You plead to this. There's debates about what that would mean at sentencing and that you're able to then capture the lower one later. I mean, do they deal with that? I thought they were just more straightforward. They weren't about sentencing ranges. They were just you plead to X, Y, Z or you plead to just X, Y. Right. I'm not aware of any of the cases that discuss that specific scenario. How about in the other lower courts? In other words, it's ineffective. You didn't convey this way of perceiving the offer. I'm not aware of a case that talks about any offer that would have a dual guideline range or an agree to disagree on the guideline range. But there are cases from the circuit, if you look at the Griffin case, that say that even a tentative offer does need to be communicated to the defendant. And we're not disputing that offers need to be communicated to a criminal defendant. It would be ineffective had Mr. Wishnow not communicated any of this information to the defendant. What we're saying is that he did communicate and we know that he communicated that because it was discussed in the October 30th status conference. And Judge Cohn confirmed with the defendant that he understood what they were talking about. And Judge Cohn also went over the maximum sentencing guideline exposure. There's the Smith case also from this circuit says an attorney has a duty to go over the to trial. And Judge Cohn went through that and said, you're facing a maximum of exposure of what we estimate as seven or eight years. And you realize that's very different from what the prosecution is offering you, which is somewhere in the range of 33 to 41 months. So he explained that all. Mr. Woolsey understood it. And we have it memorialized in that transcript. And for all those reasons, we ask that you affirm the district court's ruling. All right. Thank you so much. Mr. Shank. Thank you, Your Honor. So the government mentioned that this case wasn't worse than a battle of affidavits. It is, in fact, worse than a battle of affidavits. There's no affidavit from Mr. Wishnow. There's no affidavit from A.O.C. Reynolds. There's no government notes from the October 26th meeting. And there's no declaration. There's no submission of anything that may have been filed in the U.S. Attorney's Office related to what happened at that October 26, 2012 meeting. The client wouldn't be here, though, except for the notes, the cryptic notes. I mean, that is what seems to have brought him here and given him the idea that he may have a claim. I think it was the notes and also Mr. Wishnow's letter describing those notes as being multiple law firsts. I think that's right. But in any event, I think that the use of the word plural at one point and taking it back at the next. What's the letter say? What does the letter say? Well, you know, the letter says, I only meant here, the notes don't say. I thought he basically walked back any idea that there were several. I don't think that's true. I haven't seen anywhere in the record where Mr. Wishnow walked back that there was multiple law firsts. Sometimes he used the word scenarios instead of law firsts. Correct. But he never used the singular offer, for example, or contradicted that Mr. Wolsey's. I can't put my hand on it, but that's okay. We'll look at it. On Mr. Wolsey's interest in taking an offer, under this court's case law, it's enough to show prejudice that the defendant says he would have taken the offer that wasn't disclosed and that that offer was for a lower amount than the sentence he ultimately received. In fact, in Bass, 2018 Westlaw 498-127-3, this court said that there's actually a presumption of prejudice when the offer that wasn't disclosed is lower than the sentence that was ultimately given. I think here that presumption can't be rebutted and that the Burgess affidavit doesn't do it. Mr. Burgess came in after Mr. Wishnow and his declaration also just purports to talk about his representation, not Mr. Wolsey, not about anything Mr. Wolsey may have said to Mr. Wishnow earlier. I guess my next point on the October 29th meeting. Would it be problematic if you make an offer that says nothing about sentencing? It just says, you know, plead guilty to this, and then the nature of the crime has this same problem embedded in it, that there will later be a debate about, you know, which range you're in because of how much money was at issue. In that setting, if you just, there would be no problem, right, if you just said plead guilty to X, then it turns out if you had pled guilty, there were two options and God only knows what would have happened, right? That wouldn't be a problem, right? So I guess I'm trying to imagine why there would only be two options. Would there only be two options because they had agreed on the amount of harm? No, no, no. I'm just, I'm just making the point. It's just a run-of-the-mill case. You plead guilty to X and then at sentencing, they're going to want to know what amount was at issue in this crime to which you've pled guilty. And I'm just simplifying it. Maybe it has three or four possibilities, but just two. In that setting, you wouldn't be troubled, right, even though, or it would be ineffective if you didn't convey that, you know, we didn't really talk through this, but, you know, if you pled guilty, there actually could have been a lower range if we'd showed it was worth less than $500,000, for example. That would be ineffective because you didn't. So I think, I think it's different here and that there were two particular . . . Well, I'm not, I wasn't asking these same facts. I'm just trying to figure out the nature of the principles, how that works. So I guess, I guess it'd be ineffective if you didn't lay out with your client, hey, here's the range and that would be problematic. Not to say it could be lower, it could be higher. That's correct. And that's different than the Supreme Court cases, Judge Sutton, you know, Frye and Lathler. That's different, right? You agree with that? Yes. That's something more. Are there lower court cases that deal with this type of problem of getting into exactly how the sentence will break out if you accept the plea? Not that I have seen, Your Honor, but that said, I haven't seen any that have gone the other way and said that . . . No, no, no. I'm not aware either way myself. Okay. Yeah. So to return to the October 29th meeting, this is at page ID 2030. That letter actually doesn't say that Wishnot discussed the offer, discussed, you know, the 27 to 33 and 33 to 41 month offers on October 29th. It says he would have discussed them there. I think the would have is important. That indicates that he's saying, if I discussed them at all, it would have been at that time. That's certainly . . . Thusly. It could have been that. Yeah. So . . . But I think that there's . . . It's your client's burden, right? It is his burden, but I think the burden to get an evidentiary hearing is extremely light. And here . . . It is abuse of discretion, isn't it? It is abuse of discretion. That's correct. But I think that the judge does abuse of discretion when he doesn't make findings or even address a lot of the key facts in this case. He didn't discuss the 27 to 33 month offer. He didn't discuss this Burgess Declaration or the October 29th meeting. That actually . . . the October 29th meeting was not something the government made any argument on at all in its briefing below. So I don't think that the judge would have acted within his discretion here by just ignoring the things that would have been the contradicted facts that justify an evidentiary hearing in this case. If I have more time, I'm happy to say more or . . . I know I'm best way to put it, but is there another point you wanted to respond to? One other point, Your Honor, about the status conference. The judge did ask, do you understand what I'm talking about? Mr. Woolsey did say he understood, but he only understood, of course, what he was told. And he wasn't told anything about the 27 to 33 month offer scenario, about how the different offers or scenarios were tethered to the amount of loss or anything else other than there's a 33 to 41 month offer, period. And there's no reason for him to know to ask about things he doesn't know about. So Mr. Woolsey would ask that the court vacate his sentence or the alternative remand for an evidentiary hearing. Okay. Thanks so much. Thanks to both of you for your helpful briefs and arguments. Mr. Shank, I see you're court-appointed counsel, we're really grateful for that, and I hope your client is as well. Really appreciate it. Thanks so much. The case will be submitted and the clerk may adjourn court.